IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TIMBERLAWN MENTAL HEALTH SYSTEM, | § § § | |
| Plaintiff, | § § § | |
| v. | § § | No. 3:15-CV-2556-M |
| SYLVIA MATHEWS BURWELL, in her official capacity as Secretary, United States Department of Health and Human Services, | § § § § § | |
| Defendant. | § § § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is the Motion for Temporary Restraining Order ("TRO") of Plaintiff Timberlawn Mental Health System ("Timberlawn"), which seeks an order prohibiting Defendant Sylvia Mathews Burwell, Secretary of the United States Department of Health and Human Services (the "Secretary") from terminating its Medicare provider agreement with Timberlawn on August 14, 2015. For the following reasons, the Court denies the motion because it concludes that it lacks subject matter jurisdiction to issue the requested TRO.

### Background[1]

Timberlawn, a subsidiary of Universal Health Systems, Inc. ("UHS"), owns and operates a hospital (the "Hospital") that provides psychiatric care to patients in a seven-county area in north Texas, including Dallas. The Hospital facility includes 144 Medicare-licensed beds in Dallas and an additional 72-bed unit in Garland. In 2014, the Hospital handled approximately 12,000 total admissions and performed 14,000 psychiatric assessments. The Hospital treats

---

[1] These facts come from Timberlawn's Verified Complaint (Docket Entry #1) or the testimony at the TRO hearing on August 11, 2015.

1

patients regardless of their ability to pay, and, last year, provided approximately $4 million in uncompensated care. The Hospital also participates in the federal Medicare program pursuant to a provider agreement entered into with the Secretary. *See* Pl. Hrg. Ex. 3; Def. Hrg. Ex. 1. The Centers for Medicare and Medicaid Services ("CMS") is an agency with the United States Department of Health and Human Services that oversees the Medicare program and works with the states on Medicaid programs.

A patient suicide at the Dallas campus in December 2014 triggered a series of state and federal inspections, including at least 3 surveys conducted by CMS, which allegedly revealed significant deficiencies at Timberlawn. On July 23, 2015, CMS sent Timberlawn written notice that it had determined the Hospital no longer met the requirements for participation in the Medicare program and that the Hospital's Medicare provider agreement would be terminated on August 7, 2015. *See* Pl. Hrg. Ex. 4. That date was slightly extended by agreement to accommodate the schedule for the TRO hearing. Timberlawn maintains the consequences of the threatened termination would be devastating to Timberlawn's financial viability, because nearly eighty percent of the Hospital's funding comes from Medicare and Medicaid. *See* Pl. Hrg. Ex. 26, ¶ 3. The remaining twenty percent of its revenues come from other insurance and managed care payers that require Medicare and Medicaid eligibility to contract for services. *Id.* Timberlawn contends that its termination from the Medicare program would cause it to close the Hospital and would force its patients to find other providers.

In view of these alleged consequences, Timberlawn pursued multiple strategies to prevent termination of its Medicare provider agreement. First, Timberlawn sought administrative review of CMS's decision on an expedited basis before an administrative law judge ("ALJ") in the Civil Remedies Division of the Departmental Appeals Board for the U.S. Health and Human Services

Department. Def. Resp. App. at 209. The ALJ granted Timberlawn's request for an expedited hearing and ordered that pre-hearing materials be exchanged by September 10, 2015. *Id.* The ALJ has not yet scheduled a date for the hearing itself. Timberlawn also requested that it be allowed to enter a System Improvement Agreement ("SIA") with CMS. *See* Pl. Hrg. Ex. 28. When CMS refused to agree to an SIA, Timberlawn filed this lawsuit, on August 3, 2015.

Timberlawn's verified complaint seeks injunctive relief in the form of an order restraining CMS from terminating its Medicare provider agreement until its challenges to the agency's decision have at least been heard and adjudicated by the ALJ. Timberlawn claims that it is—and was at the time of the latest CMS survey on July 1, 2015—in substantial compliance with the requirements for participating in the Medicare program, and contends it will ultimately prevail in reversing CMS's termination decision. Timberlawn does not seek a determination from this Court on the merits of CMS's termination decision. Rather, it seeks only to enjoin the termination pending completion of the administrative review process, if not also pending completion of judicial review if the Hospital is not satisfied with the administrative review process. Timberlawn also claims that, by not entering into an SIA with Timberlawn, CMS treated the Hospital disparately from "similarly situated" hospitals that were given that opportunity.

The government opposes Timberlawn's request for a TRO. In its response to Timberlawn's motion, the government asserts that this Court lacks subject matter jurisdiction, and that the case should thus be dismissed. Alternatively, the government argues that, even if jurisdiction were proper, the Hospital has no right, pending the administrative appeal process, to postpone the termination and continue receiving payments. The government further argues that,

even if the Court has subject matter jurisdiction, Timberlawn does not satisfy the elements necessary to obtain a TRO.

The Court held an evidentiary hearing on Timberlawn's motion on August 11, 2015. Both parties appeared and presented arguments and evidence in support of their positions. Timberlawn's motion is now ripe for determination.

## Legal Standards and Analysis

### A.

Preliminary injunctive relief is "an extraordinary and drastic remedy, not to be granted routinely, but only when the movant, by a clear showing, carries the burden of persuasion." *White v. Carlucci*, 862 F.2d 1209, 1211 (5th Cir. 1989). To be entitled to a TRO, a movant must establish (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury; (3) that the threatened injury, which would occur if the injunction is denied, outweighs any harm that will result if the injunction is granted; and (4) that the grant of an injunction will not disserve the public interest. *Women's Med. Ctr. of Northwest Houston v. Bell*, 248 F.3d 411, 419 n. 15 (5th Cir. 2001); *Ladd v. Livingston*, 777 F.3d 286, 288–90 (5th Cir. 2015) *cert. denied*, — U.S. —, 135 S.Ct. 1197, 191 L.Ed.2d 149 (2015). As a threshold matter, however, the Court must evaluate its subject matter jurisdiction before considering any issues on the merits of Timberlawn's request for injunctive relief.

### B.

A federal court's jurisdiction is limited, and, unless otherwise provided by statute, federal courts generally may hear a case only (1) if it involves federal questions arising under the Constitution, laws, or treaties of the United States or (2) where diversity of citizenship exists between the parties and the amount in controversy exceeds $75,000, exclusive of interest and

costs. *See* 28 U.S.C. §§ 1331, 1332. Timberlawn, as the party seeking to invoke the federal court's jurisdiction, must prove that jurisdiction is proper. *See Boudreau v. United States*, 53 F.3d 81, 82 (5th Cir. 1995). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

1.

Timberlawn contends that the Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331. However, federal question jurisdiction is generally unavailable for claims arising under the Medicare Act. Title 42 U.S.C. § 405(h), which is incorporated into the Medicare Act by 42 U.S.C. § 1395ii, "severely restricts the authority of federal courts by requiring 'virtually all legal attacks' under the Act be brought through the agency." *Physician Hosps. of Am. v. Sebelius*, 691 F.3d 649, 653 (5th Cir. 2012) (citing *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 13 (2000). Pursuant to the statute, claims arising under the Medicare Act must be presented for determination to the Secretary in the first instance. *Id.*; *see also Ill. Council*, 529 U.S. at 13 (explaining that statutory scheme "demands the 'channeling' of virtually all legal attacks through the agency"). Judicial review of claims arising under the Medicare Act is available only after the ALJ reviews the claim and the agency issues a "final decision." *Physician Hosps.*, 691 F.3d at 653.[2]

Timberlawn's claims arise under the Medicare Act if "both the standing and the substantive basis for the presentation of the claim is the Medicare Act" or "the claim is inextricably intertwined with a claim for Medicare benefits." *RenCare, Ltd. v. Humana Health*

---

[2] The agency issues a final decision on a Medicare claim in the same manner as is provided in 42 U.S.C. § 405(g) for old-age and disability claims arising under Title II of the Social Security Act. 42 U.S.C. § 1395ff(b)(1)(C); *see also Heckler v. Ringer*, 466 U.S. 602, 605 (1984). Accordingly, if Timberlawn is dissatisfied with the ALJ's decision, it must timely request review from the Appeals Council. *See* 20 C.F.R. §§ 404.900(a)(4). If Timberlawn is dissatisfied with the ALJ's decision, but does not timely request review from the Appeals Council, it will lose its right to further administrative review and its right to judicial review, unless it can show that there was good cause for the failure to make a timely request for review. *See* 20 C.F.R. §§ 404.900(b).

*Plan of Texas, Inc.*, 395 F.3d 555, 557 (5th Cir. 2004). Here, the Court determines that Timberlawn's claims arise under the Medicare Act because the Hospital seeks to continue its participation in the Medicare program pending an administrative appeal of CMS's termination decision. *See GOS Operator, LLC v. Sebelius*, 843 F.Supp.2d 1218, 1224 (S.D. Ala. 2012) (explaining that provider's claims "arise under" the Medicare Act because it seeks to retain rights and privileges conveyed under the Act).

Timberlawn argues that this case warrants application of the "no review at all" exception to the administrative exhaustion requirement of section 405(h). In *Shalala v. Illinois Council on Long Term Care, Inc.*, the Supreme Court recognized an exception to the administrative exhaustion requirement "where application of section 405(h) would not simply channel review through the agency, but would mean no review at all." *Ill. Council*, 529 U.S. at 19. Under this exception, a party may file a claim under the Medicare Act in federal court without first obtaining a final decision from the Secretary if further postponement of judicial review would have the effect of foreclosing judicial review entirely. *See id.* at 17. This case does not come within the confines of this very narrow, and rarely applied, exception. It is undisputed that Timberlawn is entitled to an administrative hearing on, and then judicial review of, CMS's decision to terminate the Hospital's Medicare provider agreement. *See* 42 U.S.C. §§ 1395cc(h) & 405(g). Because application of the administrative exhaustion requirement will not prevent review altogether, the exception does not apply. *Cathedral Rock of North College Hill, Inc. v. Shalala*, 223 F.3d 354, 361 (6th Cir. 2000); *GOS Operator*, 843 F.Supp.2d at 1225-27 (availability of administrative review foreclosed provider from availing itself of the "no review at all" exception to Medicare Act's special review process).

6

The Court recognizes that there are two district courts, not in this circuit, that have found subject matter jurisdiction in cases involving terminations of Medicare provider agreements. *See Pathfinder Healthcare, Inc. v. Thompson*, 177 F.Supp.2d 895 (E.D. Ark. 2001); *Frontier Health Inc. v. Shalala*, 113 F.Supp.2d 1192 (E.D. Tenn. 2000). The Court declines to follow these decisions, as they are not consistent with the law this Court must follow, and their outcomes are not applicable to the facts presented here. In particular, these two decisions rely on the courts' findings that the provider had a substantial likelihood of success on its administrative appeal and, in one case, that the provider would be forced to close in the absence of immediate injunctive relief. *Pathfinder Healthcare*, 177 F.Supp.2d at 897 (hospital had substantial likelihood of success on the merits); *Frontier Health*, 113 F.Supp.2d at 1193 (hospital had substantial likelihood of success on its administrative appeal and hospital would be forced to close in absence of injunctive relief). The Court disagrees that those issues are appropriately considered in this case determining subject matter jurisdiction. Nevertheless, because Timberlawn argues the issues, the Court will briefly address them. Timberlawn claims that denying federal jurisdiction pending its exhaustion of administrative proceedings would be the practical equivalent of a total denial of judicial review because the Hospital is "certain" to close its doors "soon" after it is terminated from Medicare, due to a loss of funding sources. However, in the Court's view, the evidence adduced in support of Timberlawn's motion and at the TRO hearing does not support those conclusions. A declaration submitted by UHS Regional Vice President Michele Nowak states only that "if CMS were to terminate Timberlawn it is anticipated that UHS would close this patient care facility." Pl. Hrg. Ex. 26 at ¶ 4. The record of "anticipated" closure is silent as to whether UHS would close the Hospital during the interim period while the administrative appeal proceeds on an expedited basis. As to the second issue, a substantial

7

likelihood of success on the administrative appeal, the Court notes that at the TRO hearing Timberlawn repeatedly insisted that it was not attempting to prove the merits of its claim that CMS was factually wrong when it found on July 1, 2015 that Timberlawn did not satisfy Medicare's program requirements. Thus, the Court could not, and would not, find that Timberlawn proved a substantial likelihood of success on the merits, even if the Court reached that question.

Timberlawn further argues that this Court has jurisdiction to consider Timberlawn's claims of alleged disparate treatment by CMS of the Hospital in denying the Hospital's request to enter into an SIA. According to Timberlawn, its disparate treatment claims are "entirely collateral" to its claims arising under the Medicare Act. The Court disagrees. In *Mathews v. Eldridge*, the Supreme Court held that the requirement to exhaust administrative remedies may be waived where a plaintiff asserts a collateral challenge that cannot be remedied after the exhaustion of administrative review. *Mathews*, 424 U.S. 319, 330-32 (1976). In this case, Timberlawn attempts to frame its claims in equal protection terms, but the remedy it seeks is to halt the termination of its provider status and postpone the suspension of its Medicare payments. This type of relief is administrative in nature. *Affiliated Prof. Home Health Care Agency v. Shalala*, 164 F.3d 282, 286 (5th Cir. 1999) (holding that health care agency's constitutional claim that its due process and equal protection rights were violated through the improper enforcement of Medicare regulations was not a collateral claim for purposes of waiving administrative exhaustion requirement because agency also sought to rescind termination of its Medicare provider status, and such relief was administrative in nature); *Dallas Healthcare, Inc. v. Health and Human Services Comm'n*, 921 F. Supp. 426, 428 (N.D. Tex. 1996) (skilled nursing facility's challenge to agency's decision to terminate facility's Medicare and Medicaid provider

agreements was not sufficiently collateral to fall within "waiver" exception to exhaustion, despite facility's contention that agency acted arbitrarily and capriciously and violated due process). Further, even if, contrary to the Court's finding, the issue of disparate treatment was collateral, the record does not support Timberlawn's disparate treatment claim. The verified complaint contains only threadbare allegations of disparate treatment, and there was not persuasive evidence adduced at the hearing that other hospitals that were offered an SIA were "similarly situated" to Timberlawn, and there was testimony to the contrary.

2.

Alternatively, Timberlawn also asserts that jurisdiction is appropriate under the Administrative Procedure Act, 5 U.S.C. § 706(1), the All Writs Act, 28 U.S.C. § 1651, and the federal mandamus statute, 28 U.S.C. § 1361. Timberlawn has not sufficiently developed its arguments to allow for meaningful review of its position. However, the Court has independently considered these alternative bases for jurisdiction and finds them lacking.

The All Writs Act empowers courts to issue writs of mandamus, but that right does not confer jurisdiction or provide an independent basis for exercising subject matter jurisdiction. *Renteria-Gonzalez v. INS*, 322 F.3d 804, 811 (5th Cir. 2002). Nor does the Administrative Procedure Act provide an independent grant of subject matter jurisdiction. *Your Home Visiting Nurse Servs. v. Shalala*, 525 U.S. 449, 457–58 (1999). The federal mandamus statute provides that "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. A writ of mandamus will issue only in extraordinary circumstances. *Kerr v. U.S. Dist. Ct. for the N. Dist. of Cal.*, 426 U.S. 394, 403 (1976). Mandamus jurisdiction may be invoked only when: (1) the plaintiff has a clear right to the relief

sought; (2) the defendant has a clear, nondiscretionary duty to perform; and (3) no other adequate remedy is available. *Citadel Healthcare Servs. v. Sebelius*, No. 3:10-CV-1077-BH, 2010 WL 5101389, at *5 (N.D. Tex. Dec. 8, 2010); *see also Maringo v. Mukasey*, 281 F. App'x 365, 368 (5th Cir. 2008) (explaining that the "unavailability of other adequate remedy is [a] requirement for mandamus jurisdiction" (citing *Jones v. Alexander*, 609 F.2d 778, 781 (5th Cir. 1980))). The Supreme Court has not decided whether mandamus relief is available at all for Medicare claims, or if it is foreclosed by 42 U.S.C. § 405(h). *Ringer*, 466 U.S. at 616. However, the Supreme Court has recognized that mandamus "is intended to provide a remedy for a plaintiff only if he has exhausted all other avenues of relief and only if the defendant owes him a clear nondiscretionary duty." *Id.* Since Timberlawn has not exhausted its administrative remedies, it is not entitled to a writ of mandamus. *Citadel Healthcare Servs.*, 2010 WL 5101389, at *5.

## CONCLUSION

Because the Court lacks subject matter jurisdiction to issue the requested TRO, Timberlawn's Motion (Docket Entry #2) is **DENIED**.[3] Also because the Court lacks subject matter jurisdiction, it *sua sponte* **DISMISSES** this case.

**SO ORDERED.**

August 13, 2015.

BARBARA M. G. LYNN
UNITED STATES DISTRICT JUDGE

---

[3] Although the Court makes note of sincere community concern and support expressed for the Hospital, the Court concludes that the lack of subject matter jurisdiction prevents the Court from analyzing issues relating to the impact of the CMS decision.